# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEFFREY C. ONCAY, | CASE NO. 1:13-cv-02082-GBC |
| Plaintiff, | |
| | (MAGISTRATE JUDGE COHN) |
| v. | |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, | MEMORANDUM |
| Defendant. | Docs. 1, 6, 7, 20, 21 |

## I.     Introduction

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying the application of Plaintiff Jeffrey C. Oncay disability insurance benefits ("DIB") under the Social Security Act, 42 U.S.C. §§401-433. (the "Act"). The Plaintiff has a previous denial of benefits by an administrative law judge ("ALJ") after a hearing dated May 4, 2010. Plaintiff did not pursue appeals or administrative remedies, and that decision addresses the same facts and issues in the present application. Consequently, the findings from the decision dated May 4, 2010 operate as res judicata to bar relitigation of those findings. The Plaintiff refiled on May 5, 2010. However, the evidence produced after May 5, 2010 is scarce, and indicates only mild to moderate abnormalities and conservative treatment. Although Plaintiff challenges the ALJ's listing analysis, credibility and RFC assessments, and assignment of weight to the medical opinions, the Court finds no merit to these objections. For the foregoing reasons, the Court will deny Plaintiff's appeal and affirm the decision of the Commissioner.

## II.     Procedural Background

On February 23, 2009, Plaintiff filed an application for DIB under Title II of the Act. (Tr.

54). Plaintiff filed a written request for a hearing, which was held on April 8, 2010. (Tr. 54). On

May 4, 2010, an administrative law judge ("ALJ") issued a decision denying Plaintiff benefits.

(Tr. 54).

The next day, May 5, 2010, Plaintiff filed the present application for DIB under Title II

of the Act. (Tr. 101-104).  On August 20, 2010, the Bureau of Disability Determination denied

this application (Tr. 67-80), and Plaintiff filed a request for a hearing on August 26, 2010.  (Tr.

84). On July 18, 2011, an ALJ held a hearing at which Plaintiff—who was represented by an

attorney—and a vocational expert ("VE") appeared and testified. (Tr. 23-50).  On August 24,

2011, the ALJ found that Plaintiff was not disabled and not entitled to benefits. (Tr. 9-22). On

October 13, 2011, Plaintiff filed a request for review with the Appeals Council (Tr. 8), which the

Appeals Council denied on May 21, 2013, thereby affirming the decision of the ALJ as the "final

decision" of the Commissioner. (Tr. 1-7).

On August 5, 2013, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. §

405(g) to appeal the decision of the Commissioner. (Doc. 1). On November 22, 2013, the

Commissioner filed an answer and administrative transcript of proceedings. (Docs. 6, 7). On

March 28, 2014, Plaintiff filed a brief in support of his appeal ("Pl. Brief"). (Doc. 20). On April

29, 2014, Defendant filed a brief in response ("Def. Brief"). (Doc. 21). On April 29, 2014, the

Court referred this case to the undersigned Magistrate Judge. Both parties consented to the

referral of this case for adjudication to the undersigned on July 29, 2014, and an order referring

the case to the undersigned for adjudication was entered on July 29, 2014. (Doc. 28).

## III.      Standard of Review

When reviewing the denial of disability benefits, the Court must determine whether

substantial evidence supports the denial. Johnson v. Commissioner of Social Sec., 529 F.3d 198,

200 (3d Cir. 2008); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988). Substantial evidence is a deferential standard of review. See Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence "does not mean a large or considerable amount of evidence." Pierce v. Underwood, 487 U.S. 552, 564 (1988). Substantial evidence requires only "more than a mere scintilla" of evidence, Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999), and may be less than a preponderance. Jones, 364 F.3d at 503. If a "reasonable mind might accept the relevant evidence as adequate" to support a conclusion reached by the Commissioner, then the Commissioner's determination is supported by substantial evidence. Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999); Johnson, 529 F.3d at 200.

### IV.     Sequential Evaluation Process

To receive disability or supplemental security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). The Act requires that a claimant for disability benefits show that he has a physical or mental impairment of such a severity that:

> He is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step evaluation process to determine if a person is eligible for disability benefits. See 20 C.F.R. § 404.1520; see also Plummer, 186 F.3d at 428. If the

Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed. See 20 C.F.R. § 404.1520.  The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment from 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. See 20 C.F.R. §§ 404.1520, 416.920. Before moving on to step four in this process, the ALJ must also determine Plaintiff's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).

The disability determination involves shifting burdens of proof. The claimant bears the burden of proof at steps one through four.   If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). The ultimate burden of proving disability within the meaning of the Act lies with the claimant. See 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a).

## V.     Res Judicata

The ALJ invoked res judicata to bar reconsideration of evidence and issues from prior to May 4, 2010, the date of the prior ALJ decision. (Tr. 17). Plaintiff asserts that the ALJ improperly invoked res judicata because there was "no discussion of, or ruling on, or evidence supporting the finding of res judicata." (Pl. Brief at 4).

However, the Court finds that the application of res judicata was proper. First, the Court generally lacks jurisdiction to review a denial on res judicata grounds. As the Third Circuit has explained:

In *Sanders,* the Supreme Court declared that § 405(g)

> clearly limits judicial review to a particular type of agency action, a "final decision of the Secretary made after a hearing." But a petition to reopen a prior final decision may be denied without a hearing as provided in § 205(b), 42 U.S.C. § 405(b) (1970 ed., Supp. V) .... Indeed, the opportunity to reopen final decisions and any hearing convened to determine the propriety of such action are afforded by the Secretary's regulations and not by the Social Security Act. Moreover, an interpretation that would allow a claimant judicial review simply by filing—and being denied—a petition to reopen his claim would frustrate the congressional purpose, plainly evidenced in § 205(g), to impose a 60-day limitation upon judicial review of the Secretary's final decision on the initial claim for benefits. 20 CFR § 404.951 (1976). Congress' determination so to limit judicial review to the original decision denying benefits is a policy choice obviously designed to forestall repetitive or belated litigation of stale eligibility claims. Our duty, of course, is to respect that choice.

430 U.S. at 108, 97 S.Ct. at 986. Similarly, the courts of appeals of several circuits have held that dismissals of "new" claims that effectively repeat previously denied claims and which are therefore held by the Secretary to be *res judicata* are not reviewable. *Davis v. Schweiker,* 665 F.2d 934 (9th Cir.1982); *Ellis v. Schweiker,* 662 F.2d 419 (5th Cir.1981); *Bagby v. Harris,* 650 F.2d 836 (6th Cir.), *cert. denied,* 454 U.S. 1087, 102 S.Ct. 647, 70 L.Ed.2d 623 (1981); *Andrews v. Harris,* 635 F.2d 1362 (8th Cir.1980) (per curiam); *Rios v. Secretary of Health, Education and Welfare,* 614 F.2d 25 (1st Cir.1980). We agree that *Sanders* and § 405(g) require this conclusion.

The magistrate reviewing the claim examined the allegations and determined that, inasmuch as Stauffer conceded that the same claim was involved in his second filing, *res judicata* was properly applied.

Stauffer v. Califano, 693 F.2d 306, 307 (3d Cir. 1982) (quoting Califano v. Sanders, 430 U.S. 99, 108, 97 S. Ct. 980, 986, 51 L. Ed. 2d 192 (1977)). Here, Plaintiff has not conceded that the same claims are involved in both applications. However, a review of the record shows that the claims are the same, and thus res judicata was properly applied.

Res judicata applies when:

1. There has been a previous determination or decision under the same subpart with respect to the same party.
2. The previous determination or decision was based on the same facts and on the same issue(s).
3. The previous determination or decision has become final by either administrative or judicial action.

I-3-3-9. Admin. Res Judicata, HALLEX I-3-3-9 (S.S.A Sept. 8, 2005) (citing 20 C.F.R. § 404.957(c)(1)); Tobak v. Apfel, 195 F.3d 183, 185-88 (3d Cir. 1999); Rogerson v. Sec'y of Health & Human Servs., 872 F.2d 24, 29 n.5 (3d Cir. 1989).

Here, Plaintiff's prior application was under the same subpart and became final by judicial action because it was determined after a hearing by an ALJ. The prior application also involves the same issue or issues. In Plaintiff's first application, he claimed that he was disabled as a result of chronic neck pain, cervical degenerative disc disease, cervical radiculopathy, gastroesophageal reflux disease, asthma, and headaches. (Tr. 56-57). The ALJ in the first decision found that Plaintiff's chronic neck pain, cervical degenerative disc disease, and cervical radiculopathy were severe, and his other impairments were not severe. (Tr. 56-57). The ALJ considered Plaintiff's herniated disc and found that one of Plaintiff's symptoms was pain and numbness radiating to his hands. (Tr. 58-59).   In the present application, Plaintiff asserted disability based on herniated discs in his lower back, radiating neck pain, numbness in his arms and fingers, and severe headaches. (Tr. 139).   Consequently, Plaintiff's claims regarding his medically determinable impairments are the same.

In Plaintiff's first application, he alleged that his impairments limited his ability to engage in household chores without needing to lie down, get his socks on, repair his recliner or walk for very long, and do a "multitude of activities" and caused him to drop things, like a cup of coffee.  (Tr. 58). In his second application, he alleged that his impairments limited his ability to engage in household chores, could not walk for very long, could not do anything, including sit, for very long without needing to lie down, and caused him to drop things, like a cup of coffee. (Tr. 31-32, 34-35, 37, 40, 152).

In addition to the fact that Plaintiff makes the same claims, he does not rely on any significant new evidence that pre-dates May 5, 2010  in making these identical claims for the second time. The only new records that pre-date May 4, 2010 are outpatient notes John Heinz Institute of Rehabilitation from August 17, 2005 to September 16, 2005. (Tr. 21, 173-190). Otherwise, all of the records before this Court that pre-date May 5, 2010 were before the ALJ when he issued his prior decision. (Tr. 21, 65).[1] These records do not require reviewing any of the issues already determined by the ALJ in the prior decision. They show that he reported that his pain averaged only a two out ten, and at worst was a six out of ten at his initial evaluation. (Tr. 176). More importantly, Plaintiff cancelled three out of his first six appointments, went to his seventh appointment, and then "no-showed" for his last five appointments. (Tr. 181). In all, he only attended four of twelve appointments and was discharged because he was a "frequent no-show." (Tr. 187). These records only support the ALJ's prior decision.

Interestingly, there were many records explicitly relied on by the ALJ in the prior decision that were not submitted with this application and before the Court. For instance, the prior ALJ had the benefit of an eight-page November 14, 2006 pain management evaluation from Community Medical Center (Exhibit 1F), a two-page January 25, 2007 outpatient evaluation from Dr. Jamshid Khademi, M.D. (Exhibit 2F), a seven-page physical RFC assessment from Dr. Elizabeth Kamener, M.D. (Exhibit 6F), an additional MRI of the Cervical Spine from Wilkes-Barre Imaging Center (Exhibit 10F), or a forty-six page Workers' Compensation/Public Disability Benefit Questionnaire by Dr. Costello (Exhibit 13F). (Tr. 21, 65-66). Given that the ALJ in the prior decision had almost twice as many medical records for

---

[1] Exhibit 5F from the prior decision is the same as the present Exhibit B4F, Exhibit 3F from the prior decision is the same as the present B3F, and Exhibit 11F from the prior decision is the same as the present Exhibit B2F. (Tr. 21, 65).

the period prior to May 5, 2010 than the ALJ for the current decision (or the Court), the Court cannot conclude that the ALJ improperly invoked res judicata.

Plaintiff argues that the ALJ's reference to his alleged onset date in August of 2005 "creates a contradiction" to his invocation of res judicata. (Pl. Brief at 4).  Essentially, Plaintiff is arguing that the ALJ's reference waived the Commissioner's right to assert res judicata. When an ALJ considers "the entire record in the new proceeding and reaches a decision on the merits, the agency has effectively reopened the prior claims and waived application of res judicata."  Kane v. Heckler, 776 F.2d 1130, 1132 (3d Cir. 1985) (quoting Purter v. Heckler, 771 F.2d 682, 695 (3d Cir.1985)). However:

> "An ALJ 'is entitled to consider evidence from a prior denial for the limited purpose of reviewing the preliminary facts or cumulative medical history necessary to determine whether the claimant was disabled at the time of his second application.' " *Id.* (quoting *Frustaglia v. Sec. of Health & Human Servs.,* 829 F.2d 192, 193 (1st Cir.1987)); *see also Groves v. Apfel,* 148 F.3d 809, 810–11 (7th Cir.1998) ("There thus is no absolute bar to the admission in the second proceeding of evidence that had been introduced in the prior proceeding yet had not persuaded the agency to award benefits."); *Burks–Marshall v. Shalala,* 7 F.3d 1346, 1348 (8th Cir.1993) ("[T]he mere allowance of evidence from the earlier applications, without more, cannot be considered a reopening of the earlier case."). While there is a "fine line" between "considering a claimant's medical history solely for the purpose of establishing whether the claimant was disabled" and "actually reconsidering that evidence," *Kaszer,* 40 Fed. Appx. at 695, it appears that the ALJ here considered records predating the 2004 application solely to determine whether Plaintiff was disabled as of the onset date set forth in such application.[10] Accordingly, the fact that the ALJ reviewed medical records that may have also been submitted in connection with Plaintiff's 2001 application does not mandate a finding that the ALJ constructively reopened the 2001 claim.

Rodriguez v. Comm'r of Soc. Sec., CIV.A. 09-190 NLH, 2011 WL 4593740 at *5 (D.N.J. Sept. 30, 2011).

Here, the ALJ explicitly considered the EMG study from November 2008 and the imaging from March of 2009 solely for the purpose of determining whether Plaintiff's "condition has severely worsened or progressed over time." (Tr. 16-17).  The ALJ concluded that these

studies did not show a progression, as the findings "have been moderately consistent since he sustained this injury." (Tr. 17). The ALJ did not mention any of the other evidence submitted that predated May 5, 2010. (Tr. 17). The Court concludes that the ALJ 's reference to the alleged onset date does not constitute a review of the entire record or a decision on the merits. Thus, the Defendant has not waived res judicata.

At the July 18, 2011 hearing, Plaintiff's prior counsel stated that he had appealed the unfavorable May 4, 2010 decision, and when the appeal was denied, he advised Plaintiff to re-file. (Tr. 25). However, there is no indication any appeal was filed. Instead, Plaintiff's claim was determined at the hearing level. (Tr. 110-11). Plaintiff could have availed himself of the administrative remedies available to him, but he did not. He is not entitled to relitigate those issues now, outside of the appeals process. The ALJ properly invoked res judicata and was entitled to consider those records that pre-date May 5, 2010 only for the limited purpose of determining if those records related to the present relevant period, such as if Plaintiff's condition had worsened or progressed.

## VI.  Relevant Facts in the Record

Plaintiff was born on July 5, 1963, and was classified by the regulations as a younger individual through the date of the ALJ decision. 20 C.F.R. § 404.1563. (Tr. 135).   He has at least a high school education and past relevant work as a police officer and prison guard. (Tr. 18).

As discussed above, the Court is bound from relitigating issues contained in the May 4, 2010 decision. In the prior decision, the ALJ described the treatment notes from Plaintiff's treating neurosurgeon, Dr. Pamella Costello. (Tr. 59). The ALJ characterized these notes as "primarily indicating mild findings" and explained that "[t]he bulk of the evidence submitted relative to Dr. Costello's observations, which is over half of the medical evidence submitted,

tends to highlight the claimant's impairment with little discussion or comment on any resulting limitations." (Tr. 59). The ALJ characterized the treatment notes from Dr. Kenneth W. Lilik as showing only "mild radiculopathy" with "mild motor loss" and "poor muscular relaxation in the cervical paraspinal muscles but little more." (Tr. 59). The ALJ rejected Dr. David Sedor's April 2010 opinion because he had only examined Plaintiff once and his opinion was based largely on Plaintiff's subjective symptoms. (Tr. 61). The ALJ also noted that opinions from Dr. Elizabeth Kamenar and Dr. Khademi supported his conclusion, given Plaintiff's upper extremity range of motion, intact reflexes, negative straight leg raising, equality of reflexes, normal lower extremity range of motion, no neck rigidity and normal heal and toe walking. (Tr. 61). Thus, the ALJ found that the medical evidence prior to May 4, 2010 failed to establish disability. (Tr. 62).

Although Plaintiff's medical records prior to May 5, 2010 indicate that he had been treated with physical therapy and epidural steroid injections, his only treatment during the relevant period was pain medication. (Tr. 142-44).

On June 2, 2010, Plaintiff followed up with his primary care physician, Dr. David J. Sedor, M.D. for neck and bilateral arm pain. (Tr. 241). Dr. Sedor noted that Plaintiff's range of motion was decreased and that he "does need to take narcotics to be comfortable. The narcotics, unfortunately, affect him cognitively adversely and limit his function." (Tr. 241). Dr. Sedor wrote that motor testing exacerbates his pain. (Tr. 241). He opined that there was "no way he can work even in a sedentary capacity without a substantial chance of neurologic worsening." (Tr. 241).

On June 8, 2010, Plaintiff filed his DIB claim. In a face-to-face interview with the state agency representative, Plaintiff was observed to have problems with sitting. (Tr. 136). He was "moving around a little in his chair, said he was in some pain." (Tr. 136).

On August 9, 2010, Plaintiff was examined by state agency consulting physician Dr. Vincent Drapiewski, M.D. (Tr. 247). His neurologic exam revealed no abnormalities. (Tr. 247). His gait was "normal in every respect," his reflexes were "brisk," and he had no atrophy. However, he had some limitations in range of motion. (Tr. 246). Plaintiff reported pain and numbness in his fourth and fifth fingers with light touch to his neck. (Tr. 246). He opined that Plaintiff had no limitations whatsoever. (Tr. 249-252).

On November 18, 2010 an MRI of Plaintiff's spine indicated minimal retrolisthesis, mild reversal of the upper cervical lordosis, unchanged minimal asymmetry of the disc at C3-C4, mild cervicothoracic lovoscoliosis, and moderate limitation in range of motion. (Tr. 316). There was no encroachment to the neural foramina and no other significant abnormalities. (Tr. 316).

On December 15, 2010, and March 28, 2011 Plaintiff followed-up with Dr. Sedor complaining of neck, arm, finger pain and numbness. (Tr. 274, 277). He had tenderness, spasm, and cervical range of motion at 35% to 40% of normal. (Tr. 274, 277). His motor testing exacerbated his pain, but his strength was 5/5. (Tr. 274, 277). At the March 28, 2011 visit, Dr. Sedor continued his pain medication and scheduled a follow-up in six to eight weeks. (Tr. 277).

On February 16, 2011, an MRI of Plaintiff's thoracic spine indicated mild kyphosis, shallow protrusion, disc herniation, with no intrinsic cord abnormalities and no enhancing lesions. (Tr. 318). An MRI of the cervical spine revealed disc osteophytes with bilateral encroachment of the neural foraminal and borderline central canal, minimal prominence of the intervertebral joints, straightening of the upper cervical lordosis, and disc desiccation. (Tr. 321).

On July 13, 2011, Dr. Sedor provided an opinion to the Benefit Determination Division of the State Employee Retirement System. (Tr. 295). He again opined that Plaintiff would not be able to work "in any capacity" without neurological worsening and noted that his narcotic

medication affects his cognitive state. (Tr. 295). He indicated that Plaintiff had significantly reduced range of motion, sensory loss, reflex changes, tenderness, muscle spasm, and impaired sleep. (Tr. 267). He indicated that Plaintiff was not a malingerer. (Tr. 268). He opined that Plaintiff's medications caused drowsiness and dizziness, and that this would "severely limit" Plaintiff's "effectiveness in the work place." (Tr. 271). . (Tr. 268). He opined that Plaintiff could only walk less than one city block, could only stand and sit for ten to fifteen minutes a time, and could only stand or sit for two hours out of an eight-hour day. (Tr. 268). He opined that Plaintiff would need to walk around every ten minutes for ten minutes and that he could only occasionally lift less than ten pounds. (Tr. 269). He opined that Plaintiff could never stoop or crouch and was likely to be absent more than four times a month. (Tr. 270). There is no other medical evidence pertinent to the relevant period.

On June 30, 2010, Plaintiff submitted a Function Report. (Tr. 150). He reported that he was able to pick his children up from school and had no problem with his personal care. (Tr. 151). He reported that he is only able to make sandwiches for meals and that he does not do any housework or yard work because it "aggravates" his "neck condition" and because his medications make him dizzy and tired. (Tr. 152).  He reported that he can drive, but no more than thirty miles. (Tr. 153). He indicated that his hobbies included watching TV, watching movies, and reading but that he was unable to do these activities when his medication makes him sleepy. (Tr. 154). He reported that he does not spend time with others and does not go out anymore. (Tr. 155). He reported that medication dulls his pain, but does not relieve it, and that his medications cause him sleepiness and nausea. (Tr. 159).

On July 18, 2011, Plaintiff appeared and testified at the hearing before the ALJ. (Tr. 25). Plaintiff's prior counsel represented to the ALJ that they had appealed the prior unfavorable

decision, and that the appeal had been denied. (Tr. 25).  Plaintiff's prior counsel indicated that the pieces of relevant new evidence were Dr. Sedor's questionnaire and the new MRIs. (Tr. 28). Plaintiff testified that he was limited by pain radiating from his neck through his arms and hands.(Tr. 31). However, he testified that he had no problem with driving, although he later clarified that he could not drive more than ten miles. (Tr. 31, 33). He testified that he was unable to engage in a variety of activities and had to spend most of the day lying down. (Tr. 32). He explained that he was tan because he received light therapy for folliculitis. (Tr. 33). He testified he had problems with dropping things, like a cup of coffee. (Tr. 34). He testified that he gets dizzy, blacks out, and falls down. (Tr. 35). He testified that he could not sit for more than fifteen minutes before needing to lie down. (Tr. 35). He testified that he was unable to lie on the MRI table for thirty minutes, and had to undergo anesthesia. (Tr. 36). He testified that, other than washing dishes for five or ten minutes, he was unable to engage in household chores. (Tr. 37). He testified that he could not walk for very long. (Tr. 40).

A vocational expert also appeared and testified. (Tr. 41). The VE testified that, given the ALJ's RFC as described below, Plaintiff would be unable to engage in past work, but would be able to engage in other work in the national economy, such as an assembler of small products, a receptionist, and telemarketing. (Tr. 45). The VE testified that, if Plaintiff's testimony were credited, there would be no work in the national economy he could perform. (Tr. 45).

On August 24, 2011, the ALJ issued his decision. (Tr. 19). At step one, he found that Plaintiff was insured through December 31, 2012 and had not engaged in substantial gainful activity since August 5, 2005, the alleged onset date. (Tr. 14). At step two, the ALJ found that Plaintiff's degenerative disc disease of the cervical spine was severe. (Tr. 14). At step three, the ALJ found that Plaintiff did not meet or equal a listed impairment. (Tr. 15).   In the RFC

assessment, the ALJ found that Plaintiff had the RFC to perform a range of sedentary work with the opportunity to sit or stand as needed, he can stand or walk for ten to fifteen minutes at a time or three to four hours cumulatively throughout, and can perform simple grasping and gross manipulation. (Tr. 15). At step four, the ALJ found that Plaintiff could not perform any past relevant. (Tr. 15). At step five, the ALJ found that Plaintiff could perform other work in the national economy, such as an assembler of small products, and receptionist, and a telemarketer. (Tr. 18-19).

## VII.    Plaintiff Allegations of Error

### A.    The ALJ's listing analysis

At step three, the ALJ wrote that "the undersigned specifically reviewed section 1.04 and although the undersigned finds that claimant's impairments are severe, they do not satisfy the requisite neurological, laboratory, clinical, or diagnostic requirements" to satisfy a listing. Plaintiff asserts that the ALJ failed to properly justify his listing analysis or consider medical equivalence or pain. (Pl. Brief at 4).

At step three, a claimant has the burden of proving that his or her severe impairment or impairments meet or equal a listed impairment.  Sullivan v. Zebley, 493 U.S. 521, 530 (1990). To meet a Listing, a claimant must show that all of the criteria for a Listing are satisfied. Id.  An impairment that meets only some of the criteria for a listed impairment is not sufficient.  Id. To qualify for benefits by showing that an impairment, or combination of impairments, is equal to a listed impairment, Plaintiff bears the burden of presenting "medical findings equal in severity to all the criteria for the one most similar listed impairment." Id. at 531.The regulations specifically address medical equivalence, including the role of pain in the equivalence analysis:

> In considering whether your symptoms, signs, and laboratory findings are medically equal to the symptoms, signs, and laboratory findings of a listed impairment, we will look

to see whether your symptoms, signs, and laboratory findings are at least equal in severity to the listed criteria. However, we will not substitute your allegations of pain or other symptoms for a missing or deficient sign or laboratory finding to raise the severity of your impairment(s) to that of a listed impairment. If the symptoms, signs, and laboratory findings of your impairment(s) are equivalent in severity to those of a listed impairment, we will find you disabled. If it does not, we will consider the impact of your symptoms on your residual functional capacity. (See paragraph (d)(4) of this section.)

20 C.F.R. § 404.1529(d)(3), see also 20 C.F.R. § 404.1526.

When an ALJ's "conclusory statement" in a Listing analysis precludes judicial review, remand is required. Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 120 (3d Cir. 2000); Fargnoli v. Massanari, 247 F.3d 34, 40 n. 4 (3d Cir.2001).However, where the ALJ discusses the factors relevant to a Listing, the Third Circuit has held that the Listing analysis is sufficient, because such discussion allows judicial review:

> [T]he ALJ's step three analysis in this case satisfies *Burnett*. *Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of *Burnett* is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review. In this case, the ALJ's decision, read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that Jones did not meet the requirements for any listing, including Listing 3.02(A). The ALJ's opinion discusses the evidence pertaining to chronic obstructive and restrictive lung disease, specifically referencing "[p]ulmonary function studies ... consistent with moderately severe obstructive and restrictive defects," but pointing to the lack of pulmonary complications, and a finding that claimant's lungs were clear. Also, the ALJ noted that claimant's medical history showed no frequent hospitalization or emergency treatments. This discussion satisfies *Burnett's* requirement that there be sufficient explanation to provide meaningful review of the step three determination.

Jones v. Barnhart, 364 F.3d 501, 501-504 (3d Cir.2004).

Here, the ALJ specifically stated that he considered Listing 1.04. The ALJ also discussed the relevant factors for each of the 1.04 subsections. Listing 1.04A requires, *inter alia*, that a claimant have motor weakness or atrophy with sensory or reflex loss. The ALJ specifically held that Plaintiff's treating physician noted normal muscle strength and deep tendon reflexes. Listing 1.04B requires spinal arachnoiditis  and Listing 1.04C requires lumbar spinal stenosis. Neither

lumbar spinal stenosis nor spinal arachnoiditis were found to be a medically determinable impairments at step two, and Plaintiff did not challenge the ALJ's step two analysis.(Tr. 14). Nor is there any evidence in the record Plaintiff suffers from either of these impairments. Listing 1.04C also requires an inability to ambulate, while Plaintiff argued that the ALJ's sit/stand option was deficient because he needed ambulate. (Pl. Brief at 6). By finding, elsewhere in the opinion, that at least one factor required for each of the subsections of Listing 1.04 was not satisfied, the ALJ satisfied his duty to explain  whether Plaintiff met a Listing.

With regard to medical equivalence, the claimant is required to produce evidence that the "symptoms, signs, and laboratory findings of your impairment(s) are equivalent in severity to those of a listed impairment."  20 C.F.R. § 404.1529(d)(3).  As discussed below, the ALJ cited to the findings within the relevant period and found them to be benign, showing at most mild to moderate abnormalities. As discussed below, the ALJ properly discounted Plaintiff's claims regarding his symptoms, including pain. Moreover, the regulations state that "we will not substitute your allegations of pain or other symptoms for a missing or deficient sign or laboratory finding to raise the severity of your impairment(s) to that of a listed impairment."  Id. Thus, the ALJ also sufficiently discussed the factors relevant to medical equivalence, and substantial evidence supports the ALJ's step three decision.

## B.        The ALJ's credibility finding

Plaintiff asserts that the ALJ failed to properly evaluate his credibility. When making a credibility finding, "the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)…that could reasonably be expected to produce the individual's pain or other symptoms." SSR 96-7P. Then:

[T]he adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the

individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7P. The Third Circuit has explained:

An ALJ must give serious consideration to a claimant's subjective complaints of pain, even where those complaints are not supported by objective evidence. *Ferguson v. Schweiker,* 765 F.2d 31, 37 (3d Cir.1985). "While there must be objective evidence of some condition that could reasonably produce pain, there need not be objective evidence of the pain itself." *Green,* 749 F.2d at 1071. Where medical evidence does support a claimant's complaints of pain, the complaints should then be given "great weight" and may not be disregarded unless there exists contrary medical evidence. *Carter,* 834 F.2d at 65; *Ferguson,* 765 F.2d at 37.

Mason v. Shalala, 994 F.2d 1058, 1067-68 (3d Cir. 1993).   "One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record." SSR 96-7P. Additionally, "the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." Id.

Here, the ALJ found that Plaintiff's impairments could reasonably be expected to produce the symptoms he alleged, but that his subjective statements were not fully credible. First, the ALJ cited to a lack of objective evidence of severe abnormalities. The ALJ noted that there were no EMG or nerve conduction studies to verify Plaintiff's complaints regarding his extremity numbness during the relevant period. Then, the ALJ noted that the EMG and nerve conduction study from November of 2008 revealed only "old or chronic mild radiculopathy." (Tr. 16, 200). The ALJ cited the February 16, 2011 MRI, which indicated only "mild to moderate abnormalities" of the cervical spine, with only one level of disc herniation with central canal stenosis and neural foraminal encroachment with no intrinsic cord abnormalities. (Tr. 16, 285).

The ALJ also explained that "physical examination findings have been consistently benign and the claimant's physician has found his motor strength and deep tendon reflexes to be within normal limits. (Tr. 17). Second, the ALJ cited to Plaintiff's conservative treatment. (Tr. 17).

In support of his claim that the ALJ's analysis was improper, Plaintiff first cites to the records from before May 5, 2010, including Dr. Costello's findings and opinion. (Pl. Brief at 7-11). However, as discussed above, res judicata precluded the ALJ from relitigating issues material to the May 4, 2010 decision. In the May 4, 2010 decision, the ALJ found that these medical records failed to support Plaintiff's credibility. (Tr. 61). Plaintiff also asserts that the diagnostic imaging ordered by Dr. Sedor supports his credibility finding. (Pl. Brief at 11-12). However, while these images indicate medically determinable impairments, they indicate nothing about the functional limitations derived from those impairments.

Plaintiff does not cite to any other evidence in support of his argument that the ALJ improperly discounted his credibility. The ALJ found that Plaintiff's statements were not fully credible because it was inconsistent with objective record evidence that indicated only mild to moderate abnormalities and because he had only received conservative treatment. These are each acceptable rationales for an adverse credibility findings. SSR 96-7p. Consequently, a reasonable mind would accept the relevant evidence as adequate to discount Plaintiff's credibility, and substantial evidence supports this assessment.

### C.     The ALJ's RFC assessment

Plaintiff asserts that the ALJ did not provide any "evidence for, or discussion of" how he made his RFC assessment. (Pl. Brief at 5). However, as discussed above, the ALJ considered the objective medical evidence and Plaintiff's subjective claims in developing his RFC.  The ALJ thoroughly summarized the objective medical evidence and properly characterized it as showing

only mild to moderate abnormalities. The ALJ thoroughly summarized Plaintiff's testimony and claims, but found them to less than fully credible because Plaintiff had pursued only a conservative course of treatment and because they were inconsistent with the record. As discussed below, the ALJ also considered and properly rejected Dr. Sedor's opinion in developing his RFC assessment. Thus, the ALJ provided sufficient evidence and discussion in his RFC assessment.

Plaintiff also asserts that the ALJ failed to make a finding regarding Plaintiff's ability to sit, which is crucial for sedentary jobs. (Pl. Brief at 6). Plaintiff further contends that "the ALJ fails to define the meaning of context of the statement: "'(H)e (claimant) should have the opportunity to sit or stand as needed.'" (Pl. Brief at 6). However, the question posted to the VE clearly contemplated sitting, as the ALJ stated that Plaintiff would "need primarily a seated occupation, but occasionally could need some sit/stand flexibility." (Tr. 45). The question also clearly explained the "context" of Plaintiff's sit and stand option, as he continued "[l]et's assume that if he's say, sitting for a half hour or so and has to get up, he would have to have the opportunity to do that." (Tr. 44). Thus, the ALJ clearly limited Plaintiff to thirty-minutes of sitting at a time, although his position would be "primarily" seated. This comports with Plaintiff's report that he can drive up to thirty miles at a time. (Tr. 153).

Plaintiff also challenges the ALJ's finding that the sit/stand option adequately accommodated his symptoms, based on his testimony and Dr. Sedor's opinion, that he would need to walk away from the station every ten minutes, rather than just sit or stand. (Pl. Brief at 6). However, as discussed above and below, the ALJ properly discounted Plaintiff's testimony and Dr. Sedor's claims. Plaintiff identifies no other evidence that would support his contention that a sit/stand option would be insufficient, so substantial evidence supports this finding.

Plaintiff asserts that the ALJ failed to explain why he found Plaintiff could "perform simple grasping and gross manipulation, despite evidence to the contrary." (Pl. Brief at 6). However, the ALJ specifically noted that there was no objective evidence that Plaintiff suffered from more than "chronic mild" radiculopathy. Moreover, Plaintiff writes that:

> It should be noted that Dr. Sedor did not give his opinion regarding claimant's finger, hand and elbow problems and the limitations therefrom, because his treatment was for claimant's spinal impairments. The opinions and findings of Dr. Costello and Dr. Lilik are dispositive of this issue.

(Pl. Brief at 14). As discussed above, neither the ALJ nor this Court may reevaluate whether Dr. Costello or Dr. Lilik's records demonstrate greater limitations on grasping and manipulation because that was already considered by the prior ALJ in the prior decision. Plaintiff has not identified any records during the relevant period that would support a conclusion that he had greater limitations than those assessed by the ALJ. Thus, substantial evidence supports the ALJ's finding and his RFC assessment overall.

### D.   The ALJ's assessment of Dr. Sedor's opinion

Plaintiff asserts that the ALJ improperly evaluated Dr. Sedor's opinion.  The ALJ assigned little weight to Dr. Sedor's opinion because it was "extreme," it was inconsistent with his treatment notes, and it was based mostly on Plaintiff's subjective complaints. (Tr. 16-18).

The Social Security Regulations state that when the opinion of a treating physician is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," it is to be given controlling weight. 20 C.F.R.   § 416.927(d)(2).   20 C.F.R. §404.1527(c) establishes the factors to be considered by the ALJ when the opinion of a treating physician is not given controlling weight. Under 20 C.F.R. §§404.1527(c)(1) and (2), the opinions of treating physicians are given greater weight than opinions of non-treating physicians and opinions of examining physicians are given

greater weight than opinions of non-examining physicians. 20 C.F.R. §404.1527(c)(2) also differentiates among treating relationships based on the length of the treating relationship and the nature and extent of the treating relationship.  20 C.F.R. §404.1527(c)(4) states that "the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion." 20 C.F.R. §404.1527(c)(5) provides more weight to specialists, and 20 C.F.R. §404.1527(c)(6) allows consideration of other factors which "tend to support or contradict the opinion." For instance, an ALJ may point to inconsistencies between the physician's opinion and treatment record to assign little weight to the opinion.  Plummer v. Apfel, 186 F.3d 422, 430 (3d Cir. 1999).  Additionally, "[a]n ALJ may discredit a physician's opinion on disability that was premised largely on the claimant's own accounts of her symptoms and limitations when the claimant's complaints are properly discounted."  Morris v. Barnhart, 78 Fed. Appx. 820, 825 (3d Cir. 2003)(citing Fair v. Bowen, 885 F.2d 597, 605 (9th Cir.1989)).

In support of his credibility argument, Plaintiff first summarizes Dr. Sedor's opinion and notes that he bases it on Plaintiff's radiological studies. (Pl. Brief at 12). Plaintiff then asserts that, "throughout his evaluations, Dr. Sedor notes the presence of pain on physical examination in the parascapular area, headaches, constant and severe back, back, arm, and leg pain." (Pl. Brief at 13). Plaintiff also asserts that "[p]ositive objective findings included significantly reduced range of motion in the cervical and lumbar spine, positive straight leg raising bilaterally, sensory loss, reflex changes, tenderness to palpation muscle spasm and impaired sleep." (Tr. 13).

Dr. Sedor evaluated Plaintiff on February 5, 2010, and indicated additional objective findings, but did not indicate positive straight leg raise.  Regardless, the prior ALJ's decision found that this evaluation was entitled to little weight because:

> Dr. Sedor observed the claimant on one occasion this year during examination After the examine, Dr. Sedor essentially made determinations concerning the claimant's

capabilities that were unsupported anywhere else in the medical file and could only have been based on subjective complaints by the claimant. Even the claimant's prior statements were wholly unsupportive of the limitations the Dr. Sedor indicated

(Tr. 61). The ALJ in the present decision and the Court are bound by this finding.

Dr. Sedor evaluated Plaintiff on December 15, 2010 and March 28, 2011. (Tr. 274, 277). Dr. Sedor completed an opinion statement on June 13, 2011, but there is no indication he examined Plaintiff on that date. The only objective signs noted were limited range of motion, muscle spasm, and positive spurling tests. (Tr. 274, 277). There was no reference to the reflex loss, sensory loss, or positive straight leg raise indicated in his opinion. Like the physician in Morris, Dr. Sedor did not have an extensive or frequent treating relationship with Plaintiff. The Court also notes that Dr. Sedor based his assessment in part on Plaintiff's physical therapy at John Heinz Center, apparently without knowing that Plaintiff only attended four of twelve appointments and was discharged for "frequent no shows." The prior ALJ characterized Dr. Sedor's assessment as contrary to Plaintiff's self-reported abilities. Thus, the ALJ properly concluded that Dr. Sedor's extreme opinion was inconsistent with his treatment notes and was based largely on Plaintiff's subjective symptoms, which were less than credible. A reasonable mind could accept this evidence as adequate to reject Dr. Sedor's opinion, so substantial evidence supports the ALJ's assignment of weight.

## VIII.   Conclusion

Therefore, the Court finds that the ALJ made the required specific findings of fact in determining whether Plaintiff met the criteria for disability, and the findings were supported by substantial evidence. 42 U.S.C. §§ 405(g), 1382c; Brown, 845 F.2d at 1213; Johnson, 529 F.3d at 200; Pierce, 487 U.S. at 552; Hartranft, 181 F.3d at 360; Plummer, 186 F.3d at 427; Jones, 364 F.3d at 503. Substantial evidence is less than a preponderance of the evidence, but more than a

mere scintilla of evidence. It does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971). Thus, if a reasonable mind might accept the relevant evidence as adequate to support the conclusion reached by the Acting Commissioner, then the Acting Commissioner's determination is supported by substantial evidence and stands. Monsour Med. Ctr., 806 F.2d at 1190. Here, a reasonable mind might accept the relevant evidence as adequate. Accordingly, the Court will affirm the decision of the Commissioner pursuant to 42 U.S.C. § 405(g).

An appropriate Order in accordance with this Memorandum will follow.

Dated: September 26, 2014              _____s/Gerald B. Cohn_____
                                       GERALD B. COHN
                         UNITED STATES MAGISTRATE JUDGE